IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

RONALD L. BRANHAM,                  )
                                    )
            Petitioner,             )
                                    )
                                    )       CIV-04-1679-M
v.                                  )
                                    )
RANDALL WORKMAN, Warden,            )
                                    )
            Respondent.             )

REPORT  AND  RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. §2241.  Petitioner asserts that Oklahoma Department

of Corrections ("DOC") officials violated various of his constitutional rights when 2,106

earned credits were removed from his correctional record as a result of an audit and

subsequent misconduct proceedings.  Petitioner also alleges a claim of unconstitutional

retaliation.  Respondent has responded to the Petition, to which Petitioner has filed a

"Traverse" in reply.  The matter has been referred to the undersigned Magistrate Judge for

initial proceedings consistent with 28 U.S.C. §636(b)(1)(B).  For the following reasons, it is recommended that the Petition be denied.

Petitioner is serving two, concurrent 30-year sentences for convictions for Indecent or Lewd Acts with a Child Under 16 and Indecent Exposure, both after former conviction of two or more felonies.  Petitioner began serving these sentences on March 11, 1992. Response, Ex. 1 (Consolidated Record Card).  Since beginning his incarceration in the custody of DOC, Petitioner has been disciplined on numerous occasions for violating DOC's policies.  Id. (Consolidated Record Card, at 1, 3).  On April 14, 1996, an incident/staff report was completed at the Joseph Harp Correctional Center ("JHCC") where Petitioner was incarcerated.  The incident/staff report described a search of Petitioner's cell and the discovery during that search of a prescription bottle belonging to Petitioner containing "a liquid which has an odor associated with a thinner or acetone odor." Response, Ex. 6. According to the reporting officer, Petitioner admitted that the "bottle was his and that he wanted it back...." Id. The officer confiscated the bottle along with two glue bottles containing substances with "the same odor." Id.

At the time of this cell search in April 1996, Petitioner was participating in a sex offender treatment program ("SOTP") at JHCC.[1]  A JHCC staff member noted in his

---

[1]Petitioner contends that during his incarceration at JHCC in April 1996 he was merely "attempting to get admitted in the [SOTP]" by participating in mini-groups and was not actually enrolled in the SOTP. Petition, at 3-4.  However, Respondent has provided the sworn affidavit of the Sex Offender Education Treatment Program Director who avers that "[p]articipants in the pre-treatment mini-group (unassigned working group) are in the [SOT] program." Response, Ex. 5.  Petitioner's unit classification committee at JHCC considered

"progress notes" on April 15, 1996, that Petitioner met with four staff members and admitted he "had contact over the weekend with cellmate and acknowledged 'huffing' paint thinner." Response, Ex. 9.  The JHCC staff member noted that the staff would "team" and recommend transferring Petitioner from JHCC and that he may re-apply to the SOTP in one year. Response, Ex. 9.

Petitioner was charged with the misconduct of possession/manufacture of contraband as a result of the cell search, and he pled guilty to this misconduct offense on April 16, 1996. Response, Ex. 7.  He was found guilty of the misconduct offense in a disciplinary hearing conducted on April 17, 1996. Response, Ex. 8. The punishment imposed for this misconduct offense included 30 days in disciplinary segregation and the loss of 365 days of earned credits. Id.  Although the head of the facility initially affirmed the disciplinary findings and punishment, the facility head dismissed the misconduct conviction on April 22, 1996, without comment. Response, Ex. 8.

---

Petitioner to be a participant in the SOTP in April 1996. Response, Ex. 10. Further, the DOC Director's Designee and the DOC administrator for Sentence Administration and Offender Records considered Petitioner to be a participant in the SOTP in April 1996. Response, Ex. 16; Traverse, att. 1 (Response from Director or Designee).  Finally, the Oklahoma Court of Criminal Appeals found that Petitioner was assigned to the SOTP on February 2, 1995, was removed from the program due to program failure, and was assigned to level one status due to the program failure.  Response, Ex. 3 (Branham v. Oklahoma Dep't of Corrections, No. MA-2004-1043 (Okla. Crim. App. Nov. 12, 2004)(unpublished Order Denying Application for Writ of Mandamus)).  These factual findings are presumed to be correct, and Petitioner has not overcome the presumption with clear and convincing evidence to the contrary. 28 U.S.C. §2244(e)(1).

Petitioner's unit classification committee ("UCC") at JHCC issued a written report reflecting that it met with Petitioner on April 17, 1996, to conduct an adjustment review, that Petitioner's attitude/relationship with staff and other offenders was "poor," and that Petitioner's assigned classification level was demoted to level one effective April 17, 1996. Response, Ex. 10.  The UCC commented in this report that Petitioner's "[e]arn[ed] credit level [was being] dropped due to SOT program failure [and] misconduct.  May reapply [unintelligible]." Response, Ex. 10.  Petitioner was transferred to the Oklahoma State Reformatory ("OSR") that same day, April 17, 1996. Response, Ex. 11.

Following Petitioner's arrival at OSR, records show that a unit classification committee at OSR conducted an initial review of Petitioner's classification.  The committee inexplicably assigned Petitioner to classification level four effective May 1, 1996, and rated his program participation as "good." Response, Ex. 11.  Petitioner's consolidated record card failed to reflect the JHCC UCC's reduction in his classification level in April 1996, and Petitioner was subsequently assigned to higher classification levels two, three, and four at various times. Response, Ex. 1.

On March 19, 2001, Petitioner was advised in a written memorandum that an audit of his correctional record had been conducted by a DOC correctional records officer on that date and that 2,106 earned credits had been removed from his sentence calculation for the following reasons:

> Removed from SOT per adjustment review 4-17-96. Mandatory Level 1 per policy upon removal from program.  Your days remaining has [sic] been adjusted to reflect the correct amount

of days remaining.  Currently Level 1 until received into SOT
Program or placed on waiting List.

Response, Ex. 4.  Petitioner apparently sought the advice of Jim Rabon, DOC's administrator

for Sentence Administration and Offender Records, concerning the removal of his earned

credits by the DOC auditor.  In a letter response to Petitioner dated August 29, 2003, Mr.

Rabon advised Petitioner that Petitioner was "not entitled to earned credits" when he was

removed from the SOTP on April 15, 1996,  that he "failed the program because [he]

admitted to huffing paint thinner," and that the DOC auditor had "appropriately removed"

the credits which had been mistakenly applied to his sentence calculation following his

removal from the SOTP.  Response, Ex. 16.

In consideration of  the unpublished decision in Mayberry v. Ward, No. 01-6364,

2002 WL 1773313 (10th Cir. Aug. 2, 2002)(unpublished op.)[2] issued by the Tenth Circuit

Court of Appeals, Petitioner was charged by JHCC officials with the disciplinary misconduct

offense of "program misconduct" in a misconduct report/offense report dated May 24, 2004.

In the description of this incident contained in the misconduct report/offense report issued

against Petitioner, the reporting employee stated that on April 15, 1996, Petitioner met with

─────────────────────

[2]In Mayberry, the Tenth Circuit Court of Appeals concluded that a DOC auditor's
unilateral removal of earned credits from an Oklahoma prisoner's correctional record without
a prior hearing violated the inmate's due process rights because the "DOC has not presented
sufficient evidence to establish that Mr. Mayberry's accrual of good-time credits was indeed
a 'mistake,'" and "according to the DOC's regulations, only those 'credits lost through the
disciplinary process as documented by a misconduct report or a court ordered sanction' are
to be posted on and subtracted from, an inmate's credit record card." Mayberry, 2002 WL
1773313, at *4, 5.

SOTP staff where he acknowledged huffing paint thinner. Response, Ex. 13. The reporting employee further stated:

> This type of activity is co[nsidered] a major rule violation of the [SOTP] and [Petitioner] was transfer[red] from the facility on 4/17/96. Based on this incident as well as other issues (see atta[ched] progress notes) [Petitioner] is considered a program failure effective immediately. [Petitioner was] assigned to Level 1 based on program failure, but then improperly promoted to levels [2, 3,] and 4. He was improperly awarded 2,106 days of earned cre[dits.]

Response, Ex. 13.

A disciplinary hearing was conducted on June 9, 2004, at which Petitioner appeared and pled not guilty. The disciplinary hearing officer found Petitioner guilty of the misconduct of "Program Misconduct," violation code 02-4, based on "[p]rogress notes dated 4-15-96 stating [Petitioner] acknowledg[ed] to huffing paint thinner. This behavior resulted in him being removed from the unassigned work groups that are required for the [SOTP]." Response, Ex. 14. The "[d]iscipline imposed" for the misconduct was the revocation of 2,106 earned credits and demotion to level one classification level for 45 days, and the disciplinary hearing officer noted that the "sanctions fall under the <u>Mayberry</u> law." <u>Id.</u> The facility head affirmed this disciplinary decision. Petitioner appealed the disciplinary decision to the DOC director. Traverse, att. 1 (Offender's Misconduct Appeal). He contended that various due process rights were violated in the misconduct proceeding, including allegations that he was not provided written notice of the charge or the procedure, he was not provided copies of evidence and/or reports which he described as "enrollment or evaluation from SOTP," he was not permitted the opportunity to present relevant witness/es

or to submit relevant written witness statements, he was not permitted to present relevant documentary evidence which he described as "statement f[rom] group members - denied by investigator," there was no determination of the reliability of any confidential witness testimony, there was no written statement of the evidence utilized for a determination of guilt, there was no written reason for the discipline imposed, and there was no evidence to support the disciplinary misconduct. Id.  Petitioner also asserted that he was denied due process because of the lack of notice of a "Mayberry Hearing" in DOC policy OP-060125. Petitioner also alleged an ex post facto violation based on the assertion that the "alleged offense dated 09/15/96 was not even a Rule Violation in 1996 so it was impossible for [him] to foresee such a violation...."  Petitioner alleged a double jeopardy claim, asserting that he "has been punished twice before for this alleged offense, once at OSR after being transferred away from JHCC and a second time by the Records Officer at HMCC by taking 2106 days earned credit and dropping [his] Level to level one, now for a Third Time..."  Petitioner alleged that he was not enrolled or an active participant in the SOTP, that his "statements were used against him in violation of ... his Right to [sic] Self Incrimination and Compulsion," that the misconduct offense was "nothing more than Retaliation against [him] for his exercise of going to the Courts to regain his lost Earned Credits taken illegally by the ODOC" in violation of the First and Fourteenth Amendments and the Oklahoma Constitution, that "OP-060125 makes no provision for such an old offense," that his defense was "hampered" by the delay in charging him with the offense, and that the misconduct proceeding violated a stay issued in his state court mandamus proceeding. Id.

7

The DOC director's designee affirmed the hearing officer's decision, stating that

> [t]he Mayberry hearing is conducted to comply with the Mayberry decision. Disciplinary Procedures, OP-060125 is [sic] adapted to hold the hearing. The sanction of revocation of 2,106 earned credits was an appropriate sanction in this case, as these earned credits were given in error. There is no evidence of retaliation. The Offense Report was written in order to comply with the Mayberry decision. The charge of Individual Disruptive Behavior, 02-4, is the appropriate charge in this case....Documentation in the disciplinary paperwork verifies that you were attending the Sex Offender Treatment Program. The chrono [sic] dated 4-15-96 documented that you admitted to staff that you had huffed paint thinner over the weekend. There was no confidential witness in this case. The investigator appropriately documented that your witnesses were disqualified, as they would not have information regarding your actual removal from the program. The statement made in the evidence relied upon for a finding of guilt sufficiently meets the requirements of OP-06-125 IV.D.2. The basis for punishment imposed is documented in section IV of the Disciplinary Hearing Report. The documentation that you had a program failure is sufficient evidence to support the charge. There is sufficient evidence to support the charge of Individual Disruptive Behavior, 02-4, employment/program misconduct–Quitting job without prior approval; getting fired for misconduct on job, tardiness, or shirking of duties; failure to notify staff/employer when too ill to work; education misconduct to include cheating on tests, or possession/passing of stolen tests or answer keys. The punishment imposed is within the allowable sanctions for a Class B offense. Due process was provided. Appeal denied.

Traverse, att. 1 (Response from Director or Designee).

Prior to the initiation of the above-described disciplinary proceeding, Petitioner sought

mandamus relief in the District Court of Oklahoma County. Response, Ex. 2 (docket sheet

in <u>Branham v. Oklahoma Dep't of Corrections,</u> No. CJ-2004-2326, Oklahoma County

District Court).  Petitioner applied for a writ of mandamus or, alternatively, a declaratory

judgment in the district court on March 19, 2004, and the petition was denied in a journal

entry entered September 28, 2004. Response, Ex. 2.  Petitioner appealed this decision to the

Oklahoma Court of Criminal Appeals ("OCCA"), and on November 12, 2004, the OCCA

affirmed the district court's decision. Response, Exs. 2, 3.  In the OCCA's Order Denying

Application for Writ of Mandamus, the OCCA found:

> Petitioner alleges that his credit records were improperly
> adjusted to reflect the removal of 2,106 days of earned credit.
> It appears that [Petitioner] was received into DOC custody on
> March 11, 1992 and on February 2, 1995, was assigned to the
> Sex Offender Treatment Program.  Petition[er] was removed
> from the program on March 26, 1996, due to program failure,
> and was assigned to Level 1 status.  Petitioner was later
> erroneously assigned to Levels 2, 3, and 4, despite the recorded
> program failure.  On March 15, 2001, DOC audited its records,
> discovered the error, and removed Petitioner's 2,106 days of
> earned credit.

Response, Ex. 3.  The OCCA further found that

> [a] Mayberry hearing was conducted on June 9, 2004, in
> accordance with the decision of the 10th Circuit in Mayberry v.
> Ward, 43 Fed. Appx. 343 (10th Cir. 2002), Petitioner was found
> guilty of the program failure, and the credits were properly
> revoked.  Judge Swinton [of the district court] found Petitioner
> was afforded all due process rights to which he was entitled and
> denied Petitioner's request for relief.  We agree..... Petitioner
> was provided due process within DOC's disciplinary system,
> and is not entitled to the issuance of a writ of mandamus.

Id.  The factual findings entered by the OCCA in Petitioner's state court appeal are presumed

to be correct, and Petitioner has not overcome the presumption with clear and convincing

evidence. 28 U.S.C. §2244(e)(1).

I. <u>Due Process</u>

In his first ground for relief, Petitioner contends that the removal of the 2,106 earned credits violated his right to due process.  He relies on the <u>Mayberry</u> decision to support this contention.   Clearly, "Oklahoma 'has created a liberty interest in earned credits and an inmate is entitled to due process protection prior to the loss of those credits.'" <u>Mayberry</u>, 2002 WL 1773313, at *3 (quoting <u>Waldon v. Evans</u>, 861 P.2d 311, 313 (Okla. Crim. App. 1993)).   In <u>Mayberry</u>, the Tenth Circuit Court of Appeals found that under the DOC's established policies, the discretion to determine an Oklahoma inmate's classification level "rests with the UCC that daily deals with the inmate and not with an administrative auditor." <u>Id.</u> at *4.  Absent a recommendation by an inmate's UCC, the Tenth Circuit Court of Appeals concluded that a hearing must be provided consistent with the requirements of <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), prior to the retroactive revocation of an inmate's earned credits for "misconduct."  <u>Id.</u> at *3-*4.

Under legislation adopted in Oklahoma in 1988, Oklahoma employs a system of granting prisoners credits to reduce their sentence for good conduct. Okla. Stat. tit. 57, §138. The DOC is statutorily authorized to develop "a written policy and procedure whereby inmates shall be assigned to one (1) of four (4) class levels ...." <u>Id.</u> at §138(b).  Based on this authority, the DOC has adopted a regulation, DOC policy OP-060213, under which it classifies Oklahoma inmates.  The classification level of the inmate determines the rate at which good conduct credits are earned, and each earned credit reduces the prisoner's incarceration by one day. Okla. Stat. tit. 57, §138(A), (D)(2).

Unlike the circumstances in <u>Mayberry</u>, Petitioner's UCC established his classification level as level one on April 17, 1996, due to his program failure and misconduct. Thus, in this case Petitioner's classification level was properly determined by his UCC, and his UCC determined that Petitioner's program failure and misconduct warranted a discretionary reduction in his classification level. This discretionary classification decision is well within the authority of an Oklahoma inmate's UCC. <u>See</u> <u>Mayberry</u>, 2002 WL 1773313, *4 (Oklahoma "inmate's classification level is discretionary" and "that discretion rests with the UCC that daily deals with the inmate...")(citing, *e.g.*,OP-060211(II)(B)(providing that classification assignments "are determined by the adjustment review committee/unit treatment team based upon the desired behavior of the inmate in all areas of institutional life")).

The UCC's decision was expressly based both on Petitioner's program failure and his misconduct. Although the misconduct was subsequently dismissed, no due process deprivation occurred as a result of the DOC's failure to charge Petitioner with a misconduct offense for his "program failure" at the time of the discretionary demotion decision, which can be based on a variety of factors. <u>See</u> Okla. Stat. tit. 57, §138(B)("The DOC is directed to develop a written policy and procedure whereby inmates shall be assigned to one (1) of four (4) class levels determined by an adjustment review committee of the facility to which the inmate is assigned"); Petitioner's Traverse, att. 3 (Systems of Incarceration, DOC OP-060107(2)(a)(3))("Assignment to Level 1 [for a program failure] in lieu of an offense report can only be done by the facility classification committee.")). Changing a prisoner's

classification level "ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." Templeman v. Gunter, 16 F.3d 367, 369 (10th Cir. 1994).

Nevertheless, because earned credits at higher classification levels were mistakenly accumulated in Petitioner's correctional record after the UCC's discretionary decision to demote Petitioner to level one, the DOC was required by Mayberry to provide Petitioner with due process before it could retroactively revoke earned credits it had awarded to Petitioner. In light of Mayberry, the DOC recognized its obligation to provide Petitioner with due process in retroactively determining the issue of Petitioner's program failure. Through the proceeding conducted on the "program failure" misconduct charge, the DOC provided Petitioner with the process he was due under Wolff by issuing a written misconduct charge describing the April 1996 program failure,[3] conducting a hearing on the misconduct charge at which Petitioner was given the opportunity to call witnesses[4] and present evidence, and

---

[3]Petitioner concedes that rule 02-4 of DOC's policy OP-060125 was "the appropriate rule violation..." to describe the misconduct. Petition, at 7.

[4]The due process review of Petitioner's misconduct hearing conducted in connection with his administrative appeal contains the following comment by the DOC reviewer: "Witness requested deemed disqualified by investigator for not being present when inmate was removed from program by committee." Petitioner's Traverse, att. 1 (Offender Misconduct Appeal Form Due Process Review). Petitioner has not renewed his claim made in his administrative appeal that he was denied the right to present a witness at his misconduct hearing. Petitioner merely asserts that there may have been witnesses available to testify in his behalf. Traverse, at 3. Even if the Petition is generously construed to assert a similar claim, Petitioner has not shown that he was denied the opportunity to present any relevant witness at the misconduct hearing. See Porter v. Kimzey, No. 93-3171, 1994 WL 142374 (10th Cir. Apr. 20, 1994)(unpublished op.)(right to call witnesses at prison

providing him a written statement of the evidence relied on and the reasons for the finding

of guilt at the conclusion of the hearing.

The OCCA's finding that Petitioner was provided constitutionally adequate due

process with respect to this hearing is not contrary to, or an unreasonable application of, the

Supreme Court's prevailing decision on this issue in Wolff. Petitioner contends that he "was

not enrolled in the SOTP, only in the Unassigned Working Groups, while working at O.C.I.'s

Furniture Factory, attempting to qualify for admission into SOTP." Petition, at 8. Petitioner

presented this contention in his administrative appeal of the misconduct, and the contention

was rejected. The Director's Designee found that Petitioner was a participant of the SOTP

at the time of the misconduct and that he had admitted to conduct, huffing paint thinner, that

was a violation of the rules of the SOTP. There is "some evidence" in the record to support

this finding, as well as the finding that Petitioner's admission constituted a violation of the

SOTP. See Superintendent, Mass. Correctional Inst. V. Hill, 472 U.S. 445, 454 (1985).

Documentary evidence reflects that Petitioner admitted to JHCC staff members in April 1996

he had "huffed" paint thinner, and documentary evidence in the record further reflects that

this conduct was a violation of the rules of the SOTP in which Petitioner was participating

at the time of this conduct. Response, Exs. 5, 6, 9.

---

disciplinary hearing is not unrestricted; there is no right to call witnesses whose testimony
would be redundant or irrelevant to the proceedings)(citing Chesson v. Jaquez, 986 F.2d 363,
366 (10th Cir. 1993), and Wolff, 418 U.S. at 566).

Petitioner complains that the punishment imposed for the  misconduct was too severe under the DOC's regulations governing allowable sanctions for a misconduct  It is not entirely accurate to term the removal of the 2,106 earned credits a "disciplinary sanction." The removal of the earned credits was in effect a ministerial action which retroactively corrected the improper accumulation of earned credits in Petitioner's correctional record following the JHCC UCC's discretionary decision to demote Petitioner to classification level one on April 17, 1996, as a result of the program failure and the possession misconduct. Because of the unique nature of the <u>Mayberry</u> hearing, the DOC was not limited to the allowable sanctions for the misconduct under its disciplinary policy.  Petitioner was notified prior to the hearing in the misconduct report/offense report that the program failure could result in the  removal of 2,106 earned credits from his sentence.   Thus, Petitioner was provided notice of the possible "sanction" that could be imposed upon a finding of guilt.

Petitioner's allegation with respect to "time limits on disciplinary misconducts" is vague.  However, Petitioner is apparently asserting that his right to due process was violated by the eight-year delay in conducting the misconduct proceeding on his 1996 program failure. There is no clearly-established constitutional basis for his claim that the disciplinary proceeding was not timely conducted.  <u>See</u> <u>Wolff</u>, 418 U.S. at 556 ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.").  Petitioner has not alleged any facts from which to infer that he was unable to present a defense as a result of the delay in the filing of the misconduct charge or the removal of the earned credits.  The misconduct charge was

based on the written record compiled contemporaneously with the original UCC decision to

demote Petitioner to level one.  In the progress note completed by a JHCC staff member on

April 14, 1996, the staff member noted that Petitioner admitted to huffing paint thinner.

Petitioner admitted in his administrative appeal that his own statements provided a reason for

the  misconduct conviction.  Traverse, att. 1 (Offender's Misconduct Appeal, in which

Petitioner alleged that his "statements were used against him in violation of ... his Right to

[sic] Self Incrimination and Compulsion").  Petitioner has not shown that any delay in the

holding of the misconduct hearing denied him due process.

II. <u>Retaliation</u>

Petitioner contends that the misconduct charge for program failure was filed against

him in retaliation for his filing of the state court mandamus petition.  The standard for

evaluating Petitioner's claim of retaliatory discipline was set forth in <u>Peterson v. Shanks</u>, 149

F.3d 1440, 1444 (10th Cir. 1998):

> We have held that prison officials may not retaliate against or
> harass an inmate because of the inmate's exercise of his
> constitutional rights.  This principle applies even where the
> action taken would be otherwise permissible....[H]owever, it is
> not the role of the federal judiciary to scrutinize and interfere
> with the daily operations of a state prison, and our retaliation
> jurisprudence does not change this role.  Obviously, an inmate
> is not inoculated from the normal conditions of confinement
> experienced by convicted felons serving time in prison merely
> because he has engaged in protected activity.  Accordingly, a
> plaintiff must prove that but for the retaliatory motive, the
> incidents to which he refers, including the disciplinary action,
> would not have taken place.

Petitioner filed a petition for a writ of mandamus in the state court on March 19, 2004. Response, Ex. 2.  The misconduct charge was filed against Petitioner on May 24, 2004. Response, Ex. 13.  Petitioner has not alleged any facts other than this temporal proximity between his state mandamus action and the filing of the misconduct charge to support his claim of retaliation.  Because the DOC may reasonably have issued the misconduct charge based on the Petitioner's admission to "huffing" paint thinner, a violation of the rules of the SOTP, in order to comply with the <u>Mayberry</u> decision, Petitioner has failed to state a constitutionally-based retaliation claim.

III. <u>Ex Post Facto</u>

Petitioner contends that the removal of the 2,106 earned credits violated ex post facto guarantees.  Petitioner contends that DOC violated his rights under the Ex Post Facto Clause by "applying a procedure to events that occurred prior to the effective date of such a procedure...." Petition, at 8.   In support of this claim, Petitioner alleges that the DOC's policy OP-060107 was adopted after he was convicted.  In his "Traverse," he also asserts that a disciplinary misconduct for a program failure did not exist in April 1996.  However, Petitioner provides no evidence to support either of these ex post facto claims.

"The Ex Post Facto Clause prohibits states from passing laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." <u>Boutwell v. Keating</u>, 399 F.3d 1203, 1215 (10th Cir. 2005).  "[A]n agency regulation which is legislative in nature is encompassed by this prohibition because a legislative body 'cannot escape the Constitutional constraints on its power by delegating its lawmaking function to an agency.'"

Smith v. Scott, 223 F.3d 1191, 1193-1194 (10th Cir. 2000).  A law is ex post facto if (1) the law is retrospective in that it applies to events occurring before its enactment and (2) the law must also disadvantage the petitioner by lengthening the period of his or her incarceration or changing the definition of criminal conduct. Id. at 1194.

Since 1988, the DOC has had the authority granted under Oklahoma statute to classify Oklahoma inmates to one of four levels which determine the  amount of earned credits applied to the inmate's sentence to reduce his or her term of incarceration.  Okla. Stat. tit. 57, §138 (Supp. 1988); 1988 Okla. Sess. Law Serv. 122 (West).  Additionally, from the time of Petitioner's conviction to the present, the earned credits statute has provided that the classification level of Oklahoma inmates must be placed at level one when they are "removed from job or program assignments due to misconduct or nonperformance" or for disciplinary misconduct. Okla. Stat. tit. 57, §138(C)(1)(a).  Beginning in 1988, Okla. Stat. tit. 57, §138 required "[s]atisfactory participation in the work or program assignment at the standard required for the particular class level" before an inmate could promote to a classification level above level one. Okla. Stat. tit. 57, §138(C)(3)(a)(Supp. 1988).  The DOC's "Systems of Incarceration" policy, OP-060107, which has been modified in minor respects since it was originally adopted to carry out the statutory grant of authority to the DOC in Okla. Stat. tit. 57, §138, "does not conflict with the statute setting out the level system of classification and authorizing officials to return prisoners to level one for numerous reasons...." Mendenhall v. Saffle, No. 01-7064, 2002 WL 1227480, at *2 (10th Cir. June 6, 2002)(unpublished op.). Petitioner has not shown that he was disadvantaged by a statute or regulation that increased

17

his punishment.  Accordingly, Petitioner has not shown a violation of the Ex Post Facto Clause as a result of the misconduct conviction for the program failure or the removal of the earned credits from his correctional record which corrected the mistaken accumulation of earned credits following his program failure.

IV. Double Jeopardy Clause

With respect to Petitioner's claim of a double jeopardy violation, Petitioner asserts that the dismissal of the 1996 disciplinary decision for possession of contraband prohibits the DOC from subsequently charging him with a misconduct for the 1996 program failure.  The record shows that these two proceedings were based on entirely different facts, the first for possessing a substance with an odor associated with a paint thinner and the second for admitting to "huffing" paint thinner, a violation of the rules of the SOTP in which Petitioner was then participating.  Moreover, institutional disciplinary sanctions do not implicate the Fifth Amendment's Double Jeopardy Clause. Wirsching v. Colorado, 360 F.3d 1191, 1205 910th Cir. 2004).   Accordingly, Petitioner has failed to allege a claim of violation of the Double Jeopardy Clause.

V. DOC's Maintenance of Sentence Calculation Records

In ground three of the Petition, Petitioner asserts that the DOC has failed to maintain complete and accurate records of his sentence calculation.  With this claim, Petitioner alleges only an error of state law that is not cognizable in this federal habeas proceeding.

With respect to Petitioner's contention that the DOC stopped providing monthly accountings of sentence credits, as required by Okla. Stat. tit. 57, §138 (I), "in or around the

time of this situation April of 1996," Petition, at 13, Petitioner's awareness of the factual basis for this claim nearly nine years before his Petition was filed[5] precludes his untimely assertion of this claim.  28 U.S.C. §2244(d)(1)(D).  Petitioner has not shown due diligence in presenting this claim or the existence of extraordinary circumstances warranting the equitable tolling of the applicable one-year limitation period.  See Miller v. Marr, 141 F.3d 976, 978 (10th Cir.), cert. denied, 525 U.S. 891 (1998)(recognizing that one-year limitation period "may be subject to equitable tolling" but only where extraordinary circumstances and due diligence are shown).

VI. Violations of DOC Policies and Procedures

Petitioner alleges, in several instances, that various DOC actions did not comply with the agency's internal policies and procedures or misinterpreted the language of certain statutes with respect to institutional disciplinary procedures.  As the Supreme Court has recognized, prison regulations are "primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates." Sandin v. Conner, 515 U.S. 472, 481-482 (1995).  Although a State may create a liberty interest protected by the Due Process Clause, "these interests will be generally limited to freedom

---

[5] The one-year statutory limitation period governing the filing of a habeas petition by a state prisoner became effective on April 24, 1996.  Petitioner had one year from that date, or until April 23, 1997, to file his habeas petition raising this claim. See Hoggro v. Boone, 150 F.3d 1223, 1225-1226 (10th Cir. 1998)(establishing equitable "grace" period of one year from April 24, 1996, or until April 23, 1997, for state prisoners to file their federal habeas petitions where their time for filing a habeas petition would have expired before the effective date of the legislation establishing the limitation period).

from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.  None of the alleged violations of DOC policies and procedures or misinterpretations of state statutes "offends a fundamental constitutional guarantee." Turner v. Safley, 482 U.S. 78, 84 (1987).  Thus, Petitioner has not alleged cognizable habeas claims based on his allegations that the DOC failed to follow certain policies and procedures or erroneously interpreted a state statute describing institutional disciplinary procedures. See Hawkes v. Wyoming Dep't of Corrections Honor Conservation Camp, No. 97-8006, 1997 WL 545594, *2 (10th Cir. Sept. 4, 1997)(unpublished op.)(finding inmate's claim that prison officials failed to follow prison disciplinary procedures regarding timing of disciplinary hearing and use of same person as hearing officer and committee chairman "not actionable").

<u>RECOMMENDATION</u>

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2241 be DENIED.  Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by  May 3  , 2005, in accordance with 28 U.S.C. §636 and LCvR 72.1.  The Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein.  Moore v. United States of America, 950 F.2d 656(10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this ___13th___ day of ___April___, 2005.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE